UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

OMAR ZANDER,

                        Plaintiff,

  -against-

NEW YORK CITY DEPARTMENT OF
CORRECTION—WARDEN OF OTIS BANTUM
CORRECTION CENTER,

                        Defendant.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

16-CV-725 (AMD) (ST)

**TISCIONE, United States Magistrate Judge:**

      Omar Zander brings this suit *pro se* under 42 U.S.C. § 1983 to remedy alleged unconstitutional prison conditions. Zander alleges that the conditions at Otis Bantum Correctional Center ("OBCC"), located on Rikers Island, violated his rights under the United States Constitution. Dkt. No. 34 (Second Amended Complaint, or "2d Am. Compl.") ¶ II.D-1. Zander claims that he was present when a fellow inmate found a dead mouse in his food while eating lunch. *Id.* ¶ IV.D. Following this incident, Zander alleges that he has suffered from lasting gastrointestinal issues. *Id.* Zander seeks $50,000 in punitive damages and appropriate medical treatment; he also asks the Court to ensure that other inmates are not subjected to similar conditions. After Zander filed his Second Amended Complaint, the City of New York filed a Motion to Dismiss the suit. On April 4, 2019, the Honorable Eric N. Vitaliano referred the City's motion to me for a report and recommendation. For the reasons stated below, I recommend GRANTING the City's motion.

    A. Background

      At approximately noon, on November 24, 2015, Omar Zander was eating lunch in the mess hall at Otis Bantum Correctional Center. 2d Am. Compl. ¶ IV.D. Another inmate, who was sitting nearby, suddenly stood up and said, "something is in my stew!" *Id.* Upon inspection, it was

1

revealed that the "something" in Wilson's stew was a dead mouse. *Id.* Zander alleges that he and the other inmates were "all . . . eating from the same pot of food." *Id.* Following this incident, Zander claims that he "had very bad stomach pains, nausea, cramps and diarrhea with headaches." *Id.* ¶ V. Additionally, Zander claims that now, following the incident, he is "afraid to eat in any mess hall." *Id.*

Zander alleges that, "[t]he Warden [of OBCC] and members of his staff had knowledge of the problem with the rodents before [the alleged incident.]" *Id.* ¶ II.D-1. He alleges that the inmates should not have been allowed to access the mess hall area, where they ate lunch that day, until the rodent infestation had been solved. *Id.* By failing to follow proper safety protocols, Zander alleges that his right to be free from cruel and unusual punishment was violated. In addition, he claims that the Warden failed to fulfill his duty under section 70 of the New York State Correction Law to operate prisons with due regard for the health and safety of the persons in custody. *Id.*[1]

Zander, joined by five other plaintiffs at the time, filed suit on February 9, 2016. *See* Dkt. No. 1 ("Compl.") ¶ I.A-1. At the time of filing, all six plaintiffs were incarcerated at OBCC. *Id.* Four of these plaintiffs were dismissed by the Court for failing to pay a filing fee and file a proper Prisoner Authorization form as required under the Prison Litigation Reform Act. *See* Dkt. No. 22 (Memorandum & Order, or "Mem. & Order"), at 2, 6. The Court granted 30 days' leave for Zander and the other remaining plaintiff, Howard Newland, to file an amended complaint. *Id.* at 6. The Court directed as follows:

> [Newland and Zander] are instructed that their amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure and include all relevant known facts and dates. Should they elect to file an amended complaint, they must set forth factual allegations to support their claim against each named defendant and describe how each defendant was personally involved in the alleged deprivation of their federal rights. Newland and Zander must also allege what physical injuries

---

[1] Zander's New York Correction Law claim must be dismissed for lack of subject matter jurisdiction. Section 24 of the New York State Correction Law designates the New York State Court of Claims as the only venue for maintaining an action against the employees of the Department of Corrections and Community Supervision. *See Aghoghoubia v. Noel*, No. 17-CV-1927 (NGG) (SJB), 2019 WL 181309, at *4 (E.D.N.Y. Jan. 11, 2019); *Lyons v. Davis*, No. 17-CV-4504 (RA), 2018 WL 4759742, at *5 (S.D.N.Y. Sept. 30, 2018).

they suffered as a result of the alleged involvement of each named defendant they claim deprived them of their federal rights.

*Id.* at 5–6.

Following leave of court, on July 19, 2016, Newland filed an amended complaint, and, on August 1, 2016, Zander filed an amended complaint. *See* Mem. & Order, Dkt. No. 31, at 2 (dated March 28, 2018). The Court found that the amended complaints filed by Newland and Zander sufficiently alleged that they suffered physical injury as a direct result of eating the alleged vermin-tainted meal on November 24, 2015. *Id.* at 2–3. However, the Court found that the amended complaints did not allege any personal involvement by the named defendants. *Id.* at 3. Accordingly, the Court dismissed both amended complaints in their entirety, but granted plaintiffs an additional 30 days' leave to file second amended complaints against the individual defendants. *Id.* Newland did not file an amended complaint. *See* Mem. & Order, Dkt. No. 35, at 2 (dated July 19, 2018). Zander filed a second amended complaint alleging claims against the Warden of OBCC. *See* 2d Am. Compl ¶ I.B.

In its July 19, 2018 Memorandum & Order, the Court dismissed Newland's action on the basis that he had not filed an amended complaint in the time allotted to him and because he failed to provide the Court with an updated postal address. See Mem. & Order, Dkt. No. 35, at 2 n.1, 3. With respect to Zander's Second Amended Complaint, the Court stated that Zander "alleges direct knowledge by the Warden of [the alleged vermin-tainted] meal and of the kitchen conditions." *Id.* at 2. The Court noted that allegations of knowledge are insufficient to form the basis of liability in a case alleging supervisory liability. *Id.* at 2–3. Still, the Court stated, "Zander alleges that the Warden knew of the conditions, and allowed them to continue. That is sufficient, at this stage, to allow the complaint to proceed." *Id.* at 3.

On October 3, 2018, the Warden filed a Motion to Dismiss for Failure to State a Claim, seeking to dismiss Zander's Second Amended Complaint. *See* Dkt. No. 44.

### B. Standard of Review

When a party moves to dismiss a case under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must determine whether the complaint states a legally cognizable claim by offering allegations that, if true, would show that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *accord LLM Bar Exam, LLC v. Barbri, Inc.*, 922 F.3d 136, 140 (2d Cir. 2019). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In evaluating a motion to dismiss, courts use a "two-pronged approach" to determine whether a plaintiff has "nudged" his or her claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679, 680.

> First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party, and second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062 (PKC) (ST), 2018 WL 8369422, at *3 (E.D.N.Y. Aug. 10, 2018) (quoting *Iqbal*, 556 U.S. at 678, 679) (brackets, internal quotation marks, and other citations omitted)).

But not all pleading contexts are alike. District courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007) (other citations omitted)); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (discussing the "right to self-representation" as including an "obligation" on the court to ensure that important rights are not forfeited by the "harsh application of technical rules"). "[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). Liberal construction of a *pro se* complaint is especially important when a *pro se* plaintiff: (1) alleges civil

4

rights violations, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); or (2) uses a "boilerplate 'fill in the blanks' complaint provided by the court." *Bennett v. City of New York*, 425 F. App'x 79, 80 (2d Cir. 2011).

Applying principles of liberal construction means that courts hold a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers." *Sealed Plaintiff*, 537 F.3d at 191 (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)). Courts use care to interpret a *pro se* plaintiff's complaint "to raise the strongest claims that it suggests." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (internal quotation marks and citations omitted). Despite these liberal interpretive principles, *pro se* plaintiffs are not exempt "from compliance with relevant rules of procedural and substantive law[.]" *Traguth*, 710 F.2d at 95 (citation and internal quotation marks omitted). Put plainly, "[t]he duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (citation, brackets, and internal quotation marks omitted).

**C. Analysis**

The Warden argues that Zander has failed to state a claim for relief under § 1983 because he fails to allege facts sufficient to infer deliberate indifference to an objectively serious deprivation. The Warden also argues that Zander fails to properly plead facts suggesting municipal liability. Finally, the Warden asks the Court to dismiss Zander's claim for equitable relief as moot.

1. <u>Failure to State a Claim Under Section 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived the plaintiff of federal statutory or constitutional rights. *Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019); *see also Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). An inmate may claim under § 1983 that the conditions in which he or she is confined violate the United States Constitution. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). The applicable Constitutional provision depends on the status of the inmate's confinement. An inmate who is incarcerated following criminal conviction may argue that certain conditions

constitute "cruel and unusual punishment[]" under the Eighth Amendment; but a person who is detained awaiting trial relies on the protections found in the Due Process Clause of the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Singletary v. Russo*, 377 F. Supp. 3d 175, 184 (E.D.N.Y. 2019).  The Eighth Amendment does not apply to pretrial claims because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell*, 849 F.3d at 29 (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (brackets and internal quotation marks omitted)).

It is not clear which Constitutional provision applies here.  Zander alleges that the Eighth Amendment applies in his Second Amended Complaint.  *See* 2d Am. Compl. ¶ II.B, II.D-1.  Although Zander lists his "Prisoner Status" as a "[c]onvicted and sentenced state prisoner[,]" he is no longer confined at OBCC, see *id.* ¶ I.A. (listing Zander's "current institution" as Washington Correctional Facility in Comstock, New York), and Zander did not specifically list that his prisoner status was based on the time period giving rise to the allegations in the current suit.  The City states that OBCC does not house sentenced inmates and therefore argues that Zander was a pretrial detainee at the time of the alleged events giving rise to the suit.  *See* Memorandum of Law in Support of Defendant's Motion to Dismiss the Second Amended Complaint, Dkt. No.  45, at 4 n.2 (citing N.Y.C. Dep't of Corr., *Facilities Overview*, City of New York, https://www1.nyc.gov/site/doc/about/facilities.page)).  Caselaw corroborates the City's account— courts have repeatedly premised OBCC inmates' claims on their status as pretrial detainees.  *See, e.g.*, *Walker v. Ponte*, No. 14-CV-8507 (ER), 2016 WL 4411415, at *1 (S.D.N.Y. Aug. 18, 2016); *Smith v. City of New York*, No. 14-CV-5934 (JCF), 2015 WL 3929621, at *1 (S.D.N.Y. June 17, 2015); *Patterson v. City of New York*, No. 11-CV-7976 (DLC), 2012 WL 3264354, at *1 (S.D.N.Y. Aug. 9, 2012).  This Court assumes, without deciding, that Zander was a pretrial detainee at the time of the alleged incidents.[2]

---

[2] Regardless, pretrial detainees have a greater degree of protection under the Fourteenth Amendment than do convicted inmates under the Eighth Amendment. *See Ballard v. Lane*, 18-CV-1721 (AJN), 2019 WL 1129158, at *2 n.1 (S.D.N.Y. Mar. 12, 2019); *compare Darnell*, 849 F.3d at 29 (holding that prison officials can be held liable under the Fourteenth Amendment based on what officials know, or *should have known*, with respect to conditions

A pretrial detainee alleging a claim for unconstitutional conditions of confinement must show: (1) an "objectively serious deprivation" (the "objective" element) and (2) "the defendant's 'deliberate indifference' to any objectively serious condition of confinement" (the "mental state" element). *Darnell*, 849 F.3d at 30, 32. Besides the facts needed to show an underlying constitutional claim, a plaintiff must also allege facts suggesting that he or she is entitled to liability against a municipal entity. *See Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 439–40 (E.D.N.Y. 2009).

    i.    *Objective Element*[3]

The objective element asks whether the "challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[.]" *Id.* at 29. A deprivation is sufficiently serious where "the conditions, either alone or in combination, pose an unreasonable risk of serious damage" to the mental and/or physical health of an inmate. *Id.* at 30.

The Second Circuit has instructed that there is no "static test" to determine whether an alleged deprivation is "sufficiently serious"—instead, claims are "'evaluated in light of contemporary standards of decency.'" *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)); *accord Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Constitution does not provide relief for the inherent discomforts of prison life. *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Still, "'[s]tates must not deprive prisoners of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Phelps*, 308 F.3d at 185 (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

Zander alleges that his food was tainted with a vermin infestation. His allegations combine two different conditions—food contamination and vermin infestation. Both conditions are

---

posing an excessive risk) (emphasis added), *with Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994) (holding under the Eighth Amendment "a prison official cannot be found liable . . . unless the official *knows of* and disregards an excessive risk to inmate health or safety") (emphasis added).

    [3]    With respect to the objective element, courts analyze Eighth and Fourteenth amendment claims using the same standards. *See Darnell*, 849 F.3d at 30. Accordingly, the following analysis will cite to cases under both provisions without noting the particular provision on which the underlying claims relied. *See also Singletary*, 377 F. Supp. 3d at 187 n.2.

considered together, as alleged deprivations "must be analyzed in combination, not in isolation, at least where one alleged deprivation has a bearing on another." *Darnell*, 849 F.3d at 32 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Furthermore, although an analysis of the alleged condition of confinement focuses on the "severity and duration" of the alleged condition, and not on "the detainee's resulting injury[,] . . . the seriousness of the harms suffered . . . may shed light on the severity of the exposure." *Darnell*, 849 F.3d at 30–31; *see also Solomon v. Nassau Cty.*, 759 F. Supp. 2d 251, 259 (E.D.N.Y. 2011) (finding objectively serious deprivation based on plaintiff's allegation of rodent bite because of the potential severity of harm in contracting rabies or other diseases).

The Constitution "requires nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2019) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). Courts have routinely found that inmate plaintiffs meet the "objective prong" when it is alleged that nutritionally inadequate, contaminated, or "tainted" food was regularly served. *See, e.g.*, *Crispin v. Westchester Cty.*, No. 18-CV-7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (finding objective prong met where plaintiff alleged that his meal contained moldy food or "raw and bloody meat" on at least twenty occasions); *Lunney v. Brureton*, No. 04-CV-2438 (LAK) (GWG), 2005 WL 121720, at *6 (Jan. 21, 2005) (finding objective prong met where plaintiff alleged that he was "regularly" served spoiled food), *adopted by* 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005).

With respect to the rodents, courts have found that an inmate's exposure to rodents may rise to the level of an objective deprivation where a plaintiff alleges facts suggesting infestation. *See, e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (holding that plaintiff stated a § 1983 claim by pleading rodent infestation and other unsanitary conditions); *Forrest v. Cty. of Nassau*, No. CV 14-6979 (JFB) (AKT), 2016 U.S. Dist. LEXIS 16531, at *51-53 (E.D.N.Y. Feb. 2, 2016) (finding allegations sufficient to plead objectively serious deprivation where plaintiff

alleged that the facility was "heavily infested" with roaches, mice, spiders and other bugs); *Simmon v. Cripps*, No. 12-CV-1061 (PAC) (DF), 2013 WL 1290268, at *18 (Feb. 15, 2013), *adopted by*, 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013) (finding claim that facility was infested by vermin infestation and contained contaminated bathroom fixtures might be viable if adequately pleaded).

In *Poole v. Nassau County*, No. 15-CV-2762 (JFB) (AKT), 2016 WL 1089411, at *6 (E.D.N.Y. Mar. 21, 2016), the Court found that the plaintiff had alleged sufficient facts to plead a § 1983 conditions of confinement claim where he alleged that he suffered food poisoning "because he was served food that contained dead small ants and roaches." *Id.* As a result, he suffered "constant stomach cramps and serious pain for two days." *Id.* (record citation omitted). Although Poole did not allege that any individual defendants had knowledge of the alleged condition, the Court found that "a reasonable inference could be drawn that the risk of contamination was obvious[,]" *id.*, and therefore the Court denied the motion to dismiss.

Zander makes a plausible claim that the alleged condition was "sufficiently serious" to merit relief. Construing his pleadings liberally, Zander alleges that another inmate found a dead mouse in his meal, which suggests rodent infestation in the food supply at OBCC. This Court construes the incident as including both Zander's observation of the dead mouse in his fellow inmate's food and also Zander's experience of eating the contaminated food itself. Following the incident, Zander alleges that he has experienced painful and lasting physiological effects. These extreme side effects "shed light on [the] severity of the exposure." *Darnell*, 849 F.3d at 31. In addition to the physical effects, Zander alleges that the traumatic experience has led him to abstain from eating in any mess hall. The condition here is like *Poole*, where the inmate ate a meal infested with insects and experienced lasting and severe side effects allegedly depriving the plaintiff of the constitutional right to nutritionally adequate food. And in this case, rodent infestation in the food supply of a jail is particularly troubling based on their contraction of rabies and other diseases. *See Solomon*, 759 F. Supp. 2d at 259. Accordingly, this Court recommends finding that Zander has met the objective element of the test.

### ii. Mental State Element

To show that an official acted with deliberate indifference to an alleged unconstitutional condition of confinement, a pretrial inmate must show "that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36. In other words,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Id.* at 35.

The Warden's briefing fails to acknowledge that this Court has already decided the issue of whether Zander's allegations are sufficient to state a claim for deliberate indifference. In its July 19, 2019 Memorandum & Order, the District Court dismissed the action filed by Newland and allowed Zander's suit to proceed. In so doing, the Court discussed Zander's allegations. The Court stated, "Zander alleges that the Warden knew of the conditions, and allowed them to continue. That is sufficient, at this stage, to allow the complaint to proceed." July 19 Mem. & Order at 3. The District Court has therefore already concluded that the allegations contained in Zander's Second Amended Complaint are sufficient to allege the mental state element.

Generally, a court is barred from re-deciding an issue in a case. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("law of the case" provides "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). This Court refuses to recommend revisiting the District Court's previous finding when there have been no relevant changed circumstances suggesting a different outcome.

### iii. Municipal Liability

Zander alleges claims against the Warden of OBCC in his official capacity. *See* 2d Am. Compl. ¶ I.B. "A suit against a municipal official in his official capacity for monetary damages is in effect a suit against the municipality itself." *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 439 (E.D.N.Y. 2009) (citing *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993)). Under § 1983, a

municipality cannot be found liable on a theory of *respondeat superior*. *Id.* (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997) (other citations omitted)). Instead, a "plaintiff must show that the constitutional violation by a municipal employee resulted from a custom, policy, or practice of the municipality." *Id.* (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) (other citations omitted)). A plaintiff may plead the existence of a municipal policy or custom in four different ways, by showing:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

*Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 311 (E.D.N.Y. 2016) (citations omitted). "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Ramos v. Cty. of Suffolk*, No. 07-CV-1250 (ADS) (ETB), 2009 WL 10708571, at *2 (E.D.N.Y. Sept. 8, 2009) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (other citation omitted)).

Zander alleges that his claim arises from the Warden's failure to follow "proper safety rules and measures." Zander does not allege specifically *which* rules or measures were violated. Therefore, Zander has not alleged facts "tending to support . . . an inference" that the City of New York or OBCC actually *has* rules or measures that were not followed in this case. Nor does Zander allege the existence of any policies relating to food preparation or rodent infestation. Zander does not allege any actions taken by the Warden that might have had an influence on the presence of rodents in the food or food preparation area. Nor does Zander allege that the Warden failed to train lower-level employees in proper food safety techniques or pest control.

Zander's Second Amended Complaint fails to allege facts allowing the Court to infer that

the Warden, and by extension the City, is liable for the alleged unconstitutional conditions. Because Zander fails to allege the existence of a policy or custom, this Court respectfully recommends finding that Zander has failed to state a claim for relief under § 1983.[4]

    2. Equitable Relief

Zander requested that the Court "make sure that this don't happen to anyone else"—referring to the underlying incident in this case. 2d Am. Compl. ¶ VI. The Warden interprets Zander's statement as a request for equitable relief that should be dismissed as moot because Zander has been transferred out of OBCC. It is well-settled that "a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (citations omitted); *accord Walker v. City of New York*, 367 F. Supp. 3d 39, 51 (S.D.N.Y. 2019). Accordingly, this Court recommends that the District Court dismiss Zander's claim for equitable relief.

### D. Conclusion

This Court finds that Zander fails to state a claim for relief under 42 U.S.C. § 1983 and therefore respectfully recommends that the District Court GRANT the City's Motion to Dismiss. This Court respectfully recommends that the District Court dismiss with prejudice Zander's equitable claim for relief as moot and dismiss with prejudice Zander's claim under New York State Correction Law for lack of jurisdiction. This Court respectfully recommends dismissing Zander's remaining § 1983 claim without prejudice and granting leave to amend the complaint.[5]

---

[4] The Warden argues that Zander has failed to plead his personal involvement in the claimed violation in order to establish the Warden's individual liability. But Zander alleges claims against the Warden in his *official* capacity and not his *individual* capacity. *See* 2d Am. Compl. ¶ I.B. Because the Warden's argument is contrary to the allegations in Zander's complaint, this Court finds any discussion of the issue superfluous.

[5] This Court believes that dismissal with prejudice is inappropriate despite Zander's previous opportunities to amend the complaint following guidance from the Court. The Second Circuit has instructed courts not to dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 30 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). Claims should not be dismissed with prejudice until a *pro se* litigant has the "benefit of a ruling" highlighting "the precise defects" of those claims. *Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015); *see also Howard v. Brown*, No. 15-CV-9930 (ER), 2018 WL 3611986, at *6–7 (S.D.N.Y. July 26, 2018). The Court previously directed Zander that he "must set forth factual allegations to support [his] claim against each named defendant and describe how each defendant was personally involved in the alleged deprivation of their federal rights." *Mem. & Order*, Dkt. No. 22, at

**E. Objections to this Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x. 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x. 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
August 27, 2019

---

6 (dated June 21, 2016). Zander's Second Amended Complaint was his second attempt at drafting a complaint following guidance from the Court. Despite this history, this Report and Recommendation is the first opportunity to address precisely the need to specifically plead the existence of a "policy or custom."